In our final case today, 23-1349 Thomas Fluharty v. Philadelphia Indemnity Insurance, Mr. Cassidy. Thank you, Your Honor. Nice to see you, Mr. Cassidy. Nice to see you, Judge. Thank you all for the invitation to come down to talk to you today. I'm happy to say that I represent today Patrick S. Cassidy of Cassidy Law, PLLC in Wheeling. I have the pleasure of representing Mr. Thomas Fluharty, U.S. Bankruptcy Trustee, who is not present today, but also Martin Sheehan, also U.S. Bankruptcy Trustee, who is present today. And just to give you a brief thumbnail of how we got here, the history of this case, this involves really two different AP actions arising from bankruptcy court. The company that Mr. Sheehan represents as trustee now in bankruptcy, Geostellar, started some seven to eight years ago as a cutting-edge solar marketplace business. They were going to match providers of solar panels and efficient energy systems to homeowners, and on a national and international basis, got started in Martinsburg. Over the course of seven years, they raised in capital both loans and equity from $20 million to $30 million in performing and in creating this national, international platform to build a solar marketplace right here in West Virginia. And the first, after about seven years, the company went into bankruptcy. And Mr. Sheehan was first the Chapter 11 trustee, and then the case was converted to a Chapter 7, and he is now the Chapter 7 trustee. He filed an AP against Mr. Levine, who was the former CEO and a director of Geostellar. On behalf of Geostellar, for purposes of claiming, alleging, that Mr. Levine had misdirected the company's resources into a cryptocurrency venture, caused the demise of the corporation, ended it up in bankruptcy, alleging breaches of fiduciary duty, stealing, misappropriation of trade secrets, and various counts of negligence. Now, it turns out that Mr. Sheehan, when he became trustee, purchased an extension of the policy of insurance held by Geostellar, including directors and officers' E&O insurance. So Geostellar is the main insured under this policy. If you'll look in the joint appendix, page 169, it has the declarations page. It's Geostellar who's the insurer. And yet, Mr. Levine is also another insurer because he is the director or a former director or CEO who's being sued. He's also covered under that policy. Is the company itself covered under a directors and officers' policy? I'm sorry? The company. Is Geostellar an insured under the directors and officers' policy? Yes. I understand directors and officers' policies. The insureds are the directors and officers and not the company itself. Well, that's an issue here. But in fact, under West Virginia law, the owner of the policy, which is Geostellar, they are the main insured. They, too, are considered what we call would be a first-party claimant in terms of seeking a declaratory judgment, which is the issue here that they try to do. But, yes, Mr. Levine is essentially another insurer, but that doesn't take away Geostellar being insured. They were insured for the loss of their own director, in other words, caused by their own director. So they're both insureds under the policy. So you're representing both sides of the case in this adverse proceeding. Is that right? I am? No, I'm representing both trustees. Right, but you're saying that they're adverse to one another in the underlying litigation. No, their efforts are joint. They're not opposed to each other. And here's how, Judge, we got here. We got here because the district court below determined that they did not have injury or interest enough to grant standing, so we couldn't even reach these underlying issues of first-party, third-party claimant. And yet, to make that determination of no standing, the district court actually made those decisions as to whether or not they were first-party. In other words, they said, we said with respect to Mr. Fluharty, and this was the original intent of the declaratory judgment action. First of all, don't get misdirected by the fact there was an injunction requested in that case. That is not before the court. The court denied that. We didn't appeal it. And that had to do with an agreement for early resolution or mediation. But the second count of that declaratory judgment was to say that Mr. Fluharty, by virtue of federal bankruptcy law, 11 U.S.C. section 541A1, becomes the successor to all property equitable and legal property interests of the bankrupt. And case law from the fourth- Next to bankrupt Levine? Yes, in the Levine bankruptcy. After we filed suit against Levine, Mr. Sheehan filed suit against Levine on behalf of GeoStellar. Mr. Levine went into bankruptcy. Mr. Fluharty became the trustee in that case. Mr. Fluharty takes the position that he is entitled, under bankruptcy law, to engage in the right to consent to settle. Insurance company says no. Let me ask you about that because he- This order, this mediation order, the Levine trustee says that he is a non-participant in the mediation- The mediation order is what I'm referring to. Right. And he represents, and that he basically signs off on this mediation order that I have no interest in this mediation. And so now it sounds like he's saying, well, I do have an interest in this mediation. So that presents a little bit of confusion because there is a mediation order in which he says, the Levine trustee says that we do not have an interest in the mediation. Well, if Your Honor will please, I believe that was because he is not a party to the underlying case against Mr. Levine as a trustee. Only Trustee Sheehan is the party. So when the parties mediated the underlying case, that was his way of saying he's not involved in that mediation, which he hasn't been. That doesn't have really, that's a separate question from whether or not he has consent to settle for any particular amount. He's not actively involved in the mediation. He's not actively involved in any way in the underlying- Now, who's he in that- Mr. Flewharty. Mr. Flewharty. Right. Okay. He just says, all he says, and defendants kind of obfuscate the issue by coming back and say that these two trustees are trying to make a collusive settlement. The right to consent has never, in any insurance policy that I ever heard of, gave the person who has the right to consent control of settlement. I know, but this mediation order specifically says that the Levine trustee has no interest in the adversary action which does not involve property of the Levine bankruptcy estate. So I'm not understanding how now you're saying that he, if he said, if that's the order before, how is it now that he's saying that he does have an interest in being able to consent to the settlement? Well, that's, the order you're referring to says he has no interest in that mediation because that's dealing with property of Geostellar, not Levine. It's a case of Geostellar against Levine. With respect to the other case that he is expressing an interest in, that's the Levine bankruptcy, and he says he is interested to the extent that all property that was Levine's at the time of the bankruptcy goes to him, including the intangible rights property to give consent. It's only a question of consent. The trustee in the Levine case has no other interest in that case. Has no power to settle that case. And there's nothing, and I would like to see them ask in terms, show me in a policy where that would give control to anyone to settle the case just because they have the right to consent. You used consent and control differently? Because they're using it that way, Judge. Yes, it is different. A right to consent under a policy, and it's on page 200, I believe, Joint Appendix 200 of the policy. If you read that, it gives a right to consent. It doesn't, and policies never give the insurer the right to control settlement. It's just a matter of consenting. Even in their brief, the defendants say that he has the right to consent to a reasonable settlement. Meaning that they have shifted, they're claiming that Mr. Levine really controls whether or not this case should be settled. Even though it has been found he is completely discharged, he has no potential liability in this underlying case. He has no potential liability whether there's an excess verdict or otherwise. He has been discharged completely. And part of the problem is the bankruptcy court kind of misconstrued that. The bankruptcy court below believed that he still had some potential liability, and that's why he should retain this right to consent. He doesn't have any potential. So, for standing purposes, what is his injury? I'm sorry? For standing purposes, what is the injury to the Levine trustee? Okay. To the Levine trustee? Yes. It's his, number one, his ability to even file a declaratory judgment action. Insurance companies, as the court knows, file these things routinely because they're a first party too. It is routine for first party claimants, who we think Mr. Fluharty is also, to be able to go to court and have policy provisions ambiguous declared because they resolve things. It would help resolve a case that, by the way, is still going on five years later. The underlying case has not settled. And so this is why it's important for first party claimants to be recognized. Mr. Sheehan, for one, is clearly a first party claimant, although the court below found he was not. And he's clearly because, if you look at the Loudon case. Because I think the court below said that he was not, because he is not, he may have bought the DNO policy. I know. But that doesn't make him a first party. That's contrary to West Virginia law. Loudon case that we cited. The Loudon case, Judge, is a case of an insured Mr. Loudon suing another insured under the same policy. First party, because he bought it from himself, if I remember the facts of that correctly. Whereas differently here is this is bought, this policy, DNO policy, I think is what was bought for the benefit of Levine as a director and officer of the, of G.O. Stellar. Right? Well, no, no. The judge below was wrong about that to this extent. It was bought by G.O. Stellar for its own benefit as well as the other insurers. Counsel, counsel, can you hear me? Oh, I'm sorry. Judge, I'm over my time. So I wanted to, I wanted to follow up on the question. Oh, I'm sorry. I'm sorry, Judge. Thank you. I want to follow up on the question of Judge Benjamin about coverage. I understand that you, your assertion that under some circumstances, this policy would cover G.O. Stellar, but we're not talking about some circumstances. We're talking about in the underlying suit, the G.O. Stellar, the G.O. Stellar has brought against Levine. Are you saying that in that underlying suit, G.O. Stellar is covered? That's the issue here is whether G.O. Stellar is covered in that underlying suit. Not if it would be covered in any suit in any circumstance. But in this particular suit, is G.O. Stellar covered? If I can answer it this way, the money's not going to come from G.O. Stellar's insurance policy. It's going to come from the fact that Levine is covered under the policy separately as like an additional insurer. However. But a G.O. Stellar, G.O. Stellar is not a defendant in the suit. G.O. Stellar is the plaintiff in the suit. So how could G.O. Stellar be covered as a plaintiff in the suit? And if G.O. Stellar is not covered, how would then G.O. Stellar have standing to bring this declaratory action? A first party claimant, which G.O. Stellar is, under the dictates of Loudon, whether or not he's covered, that is a Loudon case. You have to review it. But I believe Loudon stands for the proposition that in a case where an additional insured is the one being sued by the insured, just like here, G.O. Stellar, that does not make them a third party claimant. They're still a first party claimant. They still have the right to insist on substantive, fair practices of the insurance company. That the insurance company has to act without bad faith with respect to any first party claimant. Not just a third party claimant. A first party claimant. Under West Virginia law, of course, we have banned by statute third party claimants' ability to sue for damages. Again, the court below kind of mistook this case for that kind of case because they found that Mr. Sheehan was a third party claimant. He's not a third party claimant. I say Mr. Sheehan, I really mean G.O. Stellar as to whom he really has all the property. Who would have the right here to make a shambling? That's a good question because that's an issue. Is that what they call it? Yeah. To shamblinize. Yes. Who would have that right of these folks? We believe that both Mr. Sheehan, G.O. Stellar has that right. Because they're the ones that are going to get the money for any wrongdoing of Mr. Levine. It's harm to the corporation that he has done. So in that sense, Judge Berner, I think they are covered in that sense. I mean, they're going to be the ones that are in. Is shamblin still kind of the – is that unique in state laws around the country in the principle that justice really codifies sort of a decision? It's not so unique, Judge. I think it's another state. I know Ohio has a version of it just from my own experience. But shamblin, if you read shamblin, it talks about the rights of the insured.  That includes Mr. Levine here. That also includes Mr. Sheehan because he's an insured – I mean G.O. Stellar because they're an insured. Does it include Flewharty? I think it does because – You're saying either one of the trustees could invoke shamblin. And Flewharty under the federal law, bankruptcy law. Which would simply be a demand to settle under the policy limits if you're able to.  And if you are able to and don't, you're basically an insurer for everything in excess. But that's not how they're acting. They say we have no right. No, I'm just asking you if that's my proper – if my statement is a proper understanding of what I recall about shamblin. Right. Mr. Flewharty because he got what Levine had under federal bankruptcy law. Mr. Sheehan because G.O. Stellar is an insurer too under Laudit. Are there any facts here that would justify a shamblin demand? Well, they have been made. In this record or is that speculation? No, it's happened and it has for some time. This was in the original mediation. As the court will recall, it is in the record. There was a question of a refusal to settle or that Mr. Levine wouldn't mediate or mediation was going to go and it was up to him. And then the second time around, as they point out in their brief, they did give a consent to settle. But they say in their brief that the consent was for a reasonable amount. And that's why I think it's important. They also say, so move now. He's already given consent to settle, Mr. Levine. Well, it doesn't resolve the question of whether or not Flewharty has it in the beginning. But over and above that, they're still claiming that he somehow exercises control over the amount of settlement, which is nowhere in the policy. It's not a legitimate situation that they are relying on. And they continue to rely upon it in their brief. So I'm sorry I went over that. Thank you, Mr. Kastner. Yeah. Mr. Grasmick? Well, I'm getting up there now. Take your time. Take your time. Good to have you here, sir. Thank you very much, Your Honor. I need one more pile, then I'm good. Yeah. May it please the Court. The remarkable thing, Your Honors, is consent to settle is not the issue before the court today. Whether it's first party or third party, it's not before the court today. Shamblin is not before the court today. This case is up on appeal on a 12B6 motion to dismiss entered in the bankruptcy court. The only issue before this court is, should this case be remanded and should the motion to dismiss be reversed? And the motion to dismiss was decided on standing. Consent to settle wasn't decided. Shamblin issues weren't decided. Whether or not Mr. Levine had consented to anything was not decided. What was decided was whether Mr. Fluharty had standing and whether Mr. Sheehan had standing. And those questions are entirely independent. It could be the case Fluharty— Why does not the fact that they're insureds give them standing? The fact that they're insured under the policy, why doesn't that give them standing? Well, Your Honor, I'm going to get to them separately because in the case of Mr. Fluharty, his interest is extinguished by the order entered by the bankruptcy court that allows, specifically, Mr. Sheehan to proceed against Mr. Levine to the limit of insurance only. As we explained in our brief, typically on that type of case, you don't even need to get permission from the bankruptcy for Mr. Levine because litigation is happening entirely outside the Levine bankruptcy. Litigation presents no financial risk to the Levine bankruptcy because it's only to collect money from an insurance policy that can't be used to pay any other debts in the Levine bankruptcy. The bankruptcy court entered an order, and we have that in the record, and I can read from that order if you would like, Your Honor, that said explicitly the adversarial proceeding with Mr. Sheehan against Mr. Levine may proceed to the limit of insurance only. That's significant. First, that means you can't get a judgment that exceeds the limit of insurance. There can be no threat to Mr. Fluharty's interest because there can be no order entered. Second, that means you can't have an excess judgment that gives rise to any of these bad faith claims because the adversarial proceeding can't seek a judgment that exceeds the insurance policy. So the questions you're asking, Your Honor, Justice Judge King, about, well, did we get Shamblin, you can't reach Shamblin because you can enter a verdict in the adversarial proceeding, but that verdict can't exceed the policy limit. You can never have an excess judgment. If actually Mr. Sheehan sought an excess judgment, he'd be in contempt. He can't seek that judgment. That's why in the first instance, Mr. Levine, Mr. Levine's trustee, Mr. Fluharty, cannot have standing because he can't suffer injury. There is no circumstance they can describe where there would be an injury actionable to the Levine estate because the litigation is happening entirely outside that bankruptcy, and the Levine bankruptcy is closed. I mean all the creditors that could be paid have been paid. There's no more debt. Nothing else is being done. It's entirely fictitious to say the geostellar litigation presents a threat because it can't present a threat. The order allowing that litigation precludes that threat. So your analysis then for Mr. Sheehan is separate, and the standing question there is this. Not is Mr. Sheehan a first party insured or a third party insured. It's does Mr. Sheehan have standing to bring a deck action to make Mr. Fluharty the person who consents to settlement. That's the question. The standing question below was that Mr. Sheehan can't show any injury. What is Mr. Sheehan's injury? Because Mr. Fluharty can't give consent. If we were in court below, I probably would have waited a couple of weeks to see what they say, but the reality is he can't suffer any injury. Mr. Sheehan today, as he said, is pursuing his arbitration. He can obtain a judgment in arbitration. He can get paid the policy limit if he demonstrates that result in arbitration. The fact that Mr. Fluharty can't settle the case today doesn't mean Mr. Sheehan can't get his judgment in December when the arbitration goes to trial. I mean that's pretty basic. Failure to get consent is not an injury. Think about that for a second. The issue is standing, not consent, but failure to get consent is not an injury, and they've never demonstrated it's an injury. Now, this circuit has made it clear that you just can't have standing just because you want standing in a declaratory judgment action. In fact, this court has said expressly, the Fourth Circuit has said, that in order to have standing in an insurance case, you can't be looking at questions of indemnity. You have to be looking at questions where there is already a judgment entered. Indeed, typically, this circuit has held that you cannot have standing for a declaratory judgment action on a hypothetical basis, specifically, it was in Trust Guard Insurance v. Collins, 942 F 3rd 195 at 199. This court has found standing is a jurisdictional issue we must consider independently. The irreducible constitutional minimum of standing requires the petitioner to allege a concrete injury that is actual or imminent, not conceptual or hypothetical. There's no concrete injury to Mr. Sheehan because Mr. Flewharty can't say, I'll settle your case. So what? You can litigate it to judgment and then seek the indemnity. In the same case, in Trust Guard, this court said, the suits about duty to indemnify, unlike the duty to defend suits, would ordinarily be advisory when the insurer's liability remains undetermined. Any judgment in the deck action that Mr. Flewharty somehow should give consent becomes an advisory opinion because it's purely hypothetical what would go on. What we haven't had before the court is the settlement process as described in the policy. They like to ignore that language. The settlement process requires that Mr. Levine, as an insured, under the A-side coverage of the DNL policy, give consent and that Philadelphia give consent. So if we're going to have a settlement, Philadelphia has to consent, Levine has to consent, and Mr. Sheehan has to show that he's likely to succeed on some kind of merits. He has to show some reason to consent. And those, again, are all hypotheticals, which is why this circuit has said, for a deck action, until you actually have an actual indemnity, there's no standing. Because you're just dealing with hypotheticals, you're dealing with pure speculation. What about this question, the question I asked him earlier about G.O. Stellar, and I think Judge Berners asked him the same question. He's saying that G.O. Stellar has standing because they, a first party, because they purchase, first party interest because their purchase of the insurance policy under a West Virginia case. I think he called it Loudon. Several parts to that answer, Your Honor, it's a great question. The first is, he misunderstands the policy completely. There's A-side coverage, B-side coverage, and C-side coverage. G.O. Stellar bought the policy. They're the purchaser of the policy, but they purchased it for the directors. Companies purchase DNO policies to insure their directors and officers, otherwise the officers and directors won't serve. That's why you have A-side, B-side, and C-side coverage. The A-side coverage means G.O. Stellar bought the policy, Mr. Levine is sued. He's an A-side coverage person, so Philadelphia provides a defense and indemnity to Mr. Levine. Depending on state law and whether or not you can, as G.O. Stellar, directly indemnify your officers and directors, you go into B-side coverage. B-side coverage, Philadelphia would pay G.O. Stellar, so G.O. Stellar could pay Levine. That's not happening here. C-side coverage is G.O. Stellar is sued under something that they can be sued under under the policy. As we explained in our brief, G.O. Stellar can't be sued here. They're the party bringing the lawsuit. That's why we cited the Allied Signal case that explains under a DNO policy where the trustee for the bankrupt corporation brings the lawsuit, they're a third party. The on-point cases that we cite, Allied Signal and that we list in the string site, explain very clearly A-side, B-side, C-side coverage are different. Because this is an A-side coverage case and G.O. Stellar is the plaintiff, they're not a first party. The Loudon case they want to cite from West Virginia, first the West Virginia Supreme Court said that case is unique. That's an automobile insurance policy. It's not a DNO policy. The coverage parts are different. The policies are different. In that case, the policy owner got hit by his own car when they were fixing the car because his brother hit him. And so the claimant is the policy owner because in a sense suing to get his auto insurance to pay him. So you can file a first party claim under your own auto insurance and because his brother is the occasional driver, his brother is getting covered by the insurance policy because brother is suing brother to get paid for injuries under their auto insurance policy. That's not happening with the DNO policy. G.O. Stellar is not suing itself. G.O. Stellar is suing its director. And the DNO policy actually has a carve out that allows that in the case of bankruptcy. Ordinarily, G.O. Stellar couldn't sue its director. That would be barred by the IVI, the insured versus insured exclusion. There is a carve out, though, for a bankruptcy trustee. The bankruptcy trustee can bring the lawsuit because the trustee is in part standing in the shoes of G.O. Stellar. But the bankruptcy trustee is actually standing in the shoes of the creditors. So what happens here is Mr. Sheehan, standing in the shoes of the creditors and sort of for the shareholders of G.O. Stellar, is suing Mr. Levine. He's not a first party claimant when he sues Mr. Levine. And the Allied Signal case explains that very, very clearly. You have different roles, and in bankruptcy you have different positions. And the Allied Signal court, Delaware Bankruptcy Court, will have a deference to Delaware bankruptcy people. They think a lot about these problems. And the Delaware Bankruptcy Court explained you have to look at the language of the policy. You have to look at the language of the lawsuit. You have to analyze the individual facts. And the question that was put to counsel at the end about why are they a first party claimant was a great question because they're not. That's a complete misreading of the policy, and it's also a complete misreading of the way the parties are situated. You know, Mr. Sheehan can't settle with Mr. –  Yes, Your Honor. Thank you. If the case, the grant suit case against Mr. Levine settles for – say it goes to trial and the ultimate outcome is beyond the limits of liability, who has liability for that lawsuit beyond the limits of – Your Honor, the court – Is that – I'm sorry, Your Honor. Is that Mr. Levine, or is it the Levine estate? Your Honor, you can't have that result. The order that was entered by the court allowing this litigation, and I quote from the motion, and the order granted the motion that was written, it says, this trustee moves the court for relief from the stay in this case to permit the litigation to proceed to the extent of insurance. And that's in the joint appendix at 1271. That's – Right, but the litigation has stayed above that amount. No, the litigation is proceeding, and the most litigation can award is the amount of insurance. They can't seek more. Otherwise, they're in contempt. Right. At this point, because there's a – the bankruptcy is in place, and the bankruptcy court has only lifted the stay up to the limits of liability. And that's a common occurrence in bankruptcy court, Your Honor. I'm litigating some of those cases elsewhere, and you just limit – you litigate within the spread of the order. It's like playing chess within the rules. I can only move my – So did liability under this lawsuit move at the time of bankruptcy from Mr. Levine to the estate? No. It's entirely outside of the estate because it's – you're litigating. We cite a string of cases about this in our brief that Mr. Levine's purpose is really to serve as a marker so you can evaluate the amount of damage the insurance will pay to the plaintiff. It's never been in the bankruptcy estate of Mr. Levine. It's always been outside of it, and it's always been to the limit of insurance because there's a D&O policy that can only pay on a D&O claim outside of the insurance based on Mr. Levine's status as an officer director of GeoStellar, not Mr. Levine as an individual. So the order on allowing the adversarial proceeding is you may proceed to the limit of insurance only. That's a beautiful order. Bankruptcy courts use those all the time because that's how you solve all these insoluble problems they're creating. You eliminate the need for the issue of consent because this order presents no threat to the Levine bankruptcy. You eliminate the problem of personal liability. Mr. Levine's liability was discharged by the bankruptcy, so he couldn't be liable. Because you limit the amount of the lawsuit to the insurance, you can't have an excess judgment. So you eliminate the problem of bad faith settlement because you can't have an excess judgment. That's the point of writing the order in the bankruptcy court, that you have an order. I thought Shamblin meant that the coverage extended to the excess judgment. Your Honor, it would, but Shamblin didn't apply in the context I don't think it was a bankruptcy. It wasn't a bankruptcy case, Your Honor. But it said that, excuse me. No, Your Honor, the problem with Shamblin is it's an apposite to this. It's simply because you can't have an excess judgment here. The judgment here by the court must be within the scope of the limits of the policy. Shamblin extends the coverage. No, it doesn't. That would be where you don't have this type of an order. This type of an order says Mr. Sheehan can't seek more. And Shamblin is not dealing with where there's a bankruptcy order limiting what the plaintiff may seek. The plaintiff can be constrained by bankruptcy court orders because that's how you get relief from the automatic stay. The bankruptcy court said, sorry, you may not proceed in this suit at all. The bankruptcy court said you have relief from the automatic stay and you may proceed to the limit of insurance only. That's it. You can't get an excess judgment because there's no money to pay an excess judgment. If you were to have an excess judgment, that would go to Mr. Levine. Mr. Levine's been discharged, so he couldn't pay the excess judgment. There would be an unpaid excess judgment. Shamblin might let you go after an insurance company depending on if you had a settlement. But Shamblin was very specific. In Shamblin they took out the punitive damages component because they found the insurance company hadn't acted in bad faith. And in Shamblin they also pointed out the insurance company needs to reasonably conclude that your settlement offer makes sense. It's logical. And in Shamblin there had been settlement offers, and those went back and forth where they worked. But the insurance company had found in Shamblin that the likely judgment would exceed the policy. That's the reason they ordered payment in Shamblin. You don't have that case here because, in fact, there's no suggestion at all here that Philadelphia has ever made an analysis that any judgment would exceed the value of the policy. And, in fact, Isn't there an argument that it's an eroding policy and the cost of defense could exceed the limits of liability and leave nothing for a settlement? Your Honor, that is an argument. The Allied Signal case talked about that argument and said that's true any time that you have a DNO policy with eroding limits. And it was the choice of the company to buy that policy because it was a cheaper policy. The district court here and the bankruptcy court here both observed that's just buyer's remorse by Mr. Sheehan because Mr. Sheehan chose to buy a policy with an eroding limit. Instead of extending the policy, Mr. Sheehan could have said, I want to get rid of the eroding limit. And he didn't choose to do that. So he did that to himself. Again, it's speculative if the damages would exceed the defense costs. And I don't want to touch on anything from the confidential arbitration, Your Honors, and so I'm not going to make a record that's not here. I can just say, based on my knowledge of what's been paid out, there's a lot of money left to pay. It's a $3 million policy. Defense costs have not taken that much. There's a substantial amount that could be paid. And so that's why – and there were no factual findings about that, by the way, in the district court or in the bankruptcy court. And that's not the issue on the motion to dismiss. The issue on the motion to dismiss was standing. And the fact that it's an eroding policy wouldn't confer standing on Mr. Sheehan to get Mr. Fluharty to have consent because that's not injury to Mr. Sheehan. I mean it encourages that you settle now, but settlement requires that you make a reasonable settlement demand. And again, there's no record of the settlement demands made before this court. So we can't even evaluate whether there's some reasonable settlement demands and a reasonable response. That's not the record before the court. The record before the court was that the bankruptcy court found and the district court agreed that any suggestion of injury is purely hypothetical. And under Fourth Circuit law, that doesn't give you the basis for standing for a deck action if you're dealing with the question of indemnity. All speculation. We don't know what the damages will be. They might be zero. Before you sit down, can you quickly address the issue of the reputational interest that Mr. Levine – that you claim Mr. Levine has in the lawsuit? Mr. Levine's interest, I think – his only interest is simply he doesn't want to be known as a bad person. He would like to be able to say that I didn't cause the failure of the company, and he could get vindicated. And he can get vindicated in two ways. He can get vindicated by winning a trial. I mean that would vindicate him. But he also can get vindicated by negotiating a good settlement. He can come back and say, I came up with a way to resolve the litigation, and because of that, I was able to protect the interest of the company and everyone even though I'm not there anymore. My time has ended, Your Honors. If you have no more questions, I thank you. Judge Barnard? Thank you. Thank you, Your Honors. Thank you very much, sir. Mr. Cassidy? Yes.  As Your Honors may expect, we do not agree with counsel's statements that the order of the bankruptcy court limiting collection to insurance would preclude an excess verdict because, as Judge King, you have said, we look at that as an extension of coverage of a policy under West Virginia bad faith law. But that's not an issue before this court. But we disagree with that. The one thing he didn't mention, which is a matter really of bankruptcy law, but they keep claiming there's no possible way of having an excess verdict, GeoStellar has filed a proof of claim against Mr. Levine in his bankruptcy action, even though he has been discharged. In other words, there's creditors there and they have to be paid and that sort of thing. GeoStellar has filed a proof of claim for any excess, any damages in excess of the policy limits be paid to GeoStellar as the harmed party. So that is a legitimate claim in the bankruptcy process, has nothing to do with the automatic stay. That operates by virtue of bankruptcy law. And so that is an interest Mr. Levine has in terms of any excess verdict. And, you know, I wanted to bring up, he spent a lot of time distinguishing Loudon. And none of the facts that he gave distinguish the actual syllabus points. And if I can just take a moment, syllabus point two of Loudon, of the court, syllabus point two of the court. A first party bad faith action is one wherein the insured sues his own insurer for failing to use good faith in settling a claim filed by an insured. Okay. Number three, when a named policy holder like GeoStellar files a claim with his insurer alleging that a non-named insured under the same policy caused him or her injury, i.e. Levine, the policy holder is a first party claimant in any subsequent bad faith action against the insurer arising from the handling of the policy holder's claim. It is West Virginia law that the insurance company, so as not to engage in bad faith, do a reasonable investigation of the claim on a timely basis. And settle the case, make a reasonable offer of settlement when liability has become reasonably clear. This is the duty owed to GeoStellar, not Levine, by Philadelphia. And it is one that Mr. Sheehan and Mr. Trustee, to the extent he got those rights by virtue of federal law, are interested in because, you put your hand on it again, your finger on it again, it's a wasting policy. They say there's only $3 million to begin with. They've been defending it for five years. They say there's plenty there. But if the companies, if Philadelphia is gauging in bad faith, have not assumed the risk, letting up the tort fees or make the decisions about settlement, that is Levine, he doesn't want to settle. He has no skin in the game. He can't be hurt on an excess judgment. But Levine's estate can by virtue of this proof of claim that was filed by Mr. Trustee, excuse me, by Mr. Sheehan as trustee at GeoStellar. And Mr. Sheehan's GeoStellar estate can be harmed, too, by bad faith actions of Philadelphia. That's what this case is about. But in terms of the decisions of the lower courts below, it is a question of standing. We know that. But in saying there was no standing, they actually resolved these issues that they said we weren't even going to get to by saying these gentlemen were not first-party claimants. And that's the problem with the decisions, Your Honor, on standing. And if the court were going to say that the question is mood or something, you would at least have to vacate the lower court's decisions because this is all – you talk about an advisory opinion. The court's all over the line about whether these guys are third-party plaintiffs. And that wasn't an issue even raised by our declaratory judgment action. But that was the reasoning they came to, and that's why we appealed in saying they had no standing. That's the problem. In any event, we think the harm is real. It's being suffered by GeoStellar right now to the extent the case is not settled and being cannibalized by the terms of the policy of eroding. And because these trustees of two estates are not allowed, like other first-party claimants all across the country, to seek declaratory judgments against an insurance company as to what it means, because they have been misconstrued to be third-party claimants, or hamper their ability to pursue their rights under substantive West Virginia law to assure that the insurance company treats them fairly and does not breach its duty of good faith and fair dealing. Thank you. Thank you, Mr. Cassidy. We'll come down to Greek Council and adjourn court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, DeAndrea Gist Benjamin, Nicole G. Berner